17838

Caroline Elizabeth Sides DUNLAP, Respondent, v. Anna C. BEATY *et al.,* etc., of whom Anna C. Beaty, W. Moubray Beaty and William C. Beaty are, Appellants.

(122 S. E. (2d) 9)

*Messrs. Spencer & Spencer,* of Rock Hill, *for Appellants,*

198

*Messrs. Roddey & Sumwalt,* of Rock Hill, *for Respondent,*

*Messrs. Spencer & Spencer,* of Rock Hill, *for Appellants,* in Reply,

October 2, 1961.

OXNER, Justice.

Plaintiff, Caroline Elizabeth Sides Dunlap, seeks in this action a declaratory judgment that a covenant prohibiting the use of a certain 3.67-acre tract of land in the City of Rock Hill as a store or for the conduct of mercantile business is no longer in effect and should be annulled. This covenant is contained in a deed executed by defendant Anna C. Beaty to plaintiff on March 6, 1935. Extinguishment of this restriction is sought upon the grounds (1) that it was not imposed as a part of a general scheme of improvement, and (2) that since the deed was executed, there has been such a radical change in the character of the neighborhood as to destroy the essential object and purpose of said restriction. In addition to the grantor, Anna C. Beaty, there were made parties defendant certain individuals as representatives, respectively, of those owning property in three nearby subdivisions known as "Cherry's Broad Acres", "Cherry Development, Inc." and "Cherry Park." The defendant, Anna C. Beaty, along with the class representatives of one of the subdivisions above mentioned, vigorously denied that there had been any material change in the character of the neighbor-

hood, alleged that said restriction was imposed in accordance with a unified plan in the development of a large acreage owned by Anna C. Beaty, and further alleged that regardless of whether there was uniformity in the scheme of development or any changed conditions, plaintiff was bound by her contractual obligation contained in said deed. The class representatives of the other two subdivisions filed an answer submitting their rights to the court.

The case was referred to a Referee who, after taking considerable testimony and visiting the neighborhood in which the property was located, concluded that the covenant in controversy was not imposed as a part of a general scheme of improvement; that it was a covenant personal to the grantor; and that because of the radical change in the character of the neighborhood, to which Mrs. Beaty had contributed, the essential object and purpose of the restriction had been defeated and that it should now be extinguished. His report was confirmed by the Circuit Judge, from whose decree the grantor Anna C. Beaty, and W. Moubray Beaty and William C. Beaty, class representatives of one of the subdivisions, have appealed.

At the time of the conveyance of the 3.67-acre tract by Anna C. Beaty to plaintiff in 1935, said property was bounded on the south by the highway between Rock Hill and Charlotte, on the west by Charlotte Avenue and on the north and east by other lands of the grantor. In this deed the grantor bound herself, her heirs and assigns, by a covenant that a 42-foot strip adjacent to the eastern side of said tract of land "shall always be reserved for the purpose of a roadway or park and that until such time as said tract of land may be actually converted into a roadway or park that the same shall not be used for any other purpose whatsoever, the grantee to have the right of easement over the aforesaid proposed roadway, unless the same be converted into a Park." The deed also contained the following further covenants and restrictions:

"It is covenanted and agreed that the above described premises shall never be conveyed or leased to any person of the African or Negro race. It is further covenanted and agreed that no structure shall be erected on the premises nearer to inner line of sidewalk than 25 feet.

"It is also covenanted and agreed that no building on said premises shall ever be used as a store or for the conduct of mercantile business, and that no building shall be constructed on said premises at a cost of less than Three Thousand Dollars."

The highway above mentioned forming the southern boundary of said tract is now U. S. Highway No. 21 and at this point is known as Cherry Road. Further west it is known as North York Avenue. The 42-foot strip along the eastern side of said tract of land is now used for street purposes and known as Beaty Street.

As heretofore stated, the covenant sought to be extinguished in this action is that which provides "that no building on said premises shall ever be used as a store or for the conduct of mercantile business."

The 3.67-acre tract owned by plaintiff is a part of a large body of land in and near the City of Rock Hill which was formerly owned by James M. Cherry. Prior to his death in 1920, he had a plat made of a portion of his property with the intention of developing it but little was done by him toward that end. Defendant Anna C. Beaty, his daughter, through inheritance and a conveyance from her sister, acquired most of her father's extensive holdings. In 1926 she began developing that portion of a subdivision known as "Cherry Park", which lies west of Charlotte Avenue, and opposite the property now belonging to the plaintiff. Mrs. Beaty conveyed a number of lots in this subdivision, some of which were conveyed without restrictions and others with the restrictions that they were to be used for residential purposes only. In 1931 she conveyed without restrictions a tract of land south of Cherry Road, across from plaintiff's prop-

erty, to the "Cherry Development, Inc." Most of this property was reacquired by Mrs. Beaty. She thereafter conveyed at least one of these lots fronting on Cherry Road without restrictions.

The property now owned by plaintiff is a part of a tract of 133 acres which comprised the Beaty farm. The deed by Mrs. Beaty to the plaintiff in 1935 of the 3.67-acre tract was the first conveyance made by her from the Beaty farm. No further conveyances were made from the 133-acre tract until the following year when several lots adjacent to plaintiff's property on the north were sold by Mrs. Beaty. Each of these deeds contained restrictions similar to those in the conveyance to plaintiff. In none of them was there any reference to other property of the grantor or to any general plan of development. In 1946 Mrs. Beaty opened a subdivision known as "Cherry's Broad Acres" which was carved out of the 133-acre tract. Uniform blanket restrictions were imposed on the lots in this subdivision in accordance with the requirement of the Federal Housing Administration. Since 1946 this subdivision has been developed block by block, any undeveloped land remaining unrestricted and unplatted until developed. In 1956 Mrs. Beaty conveyed to Beaty's Shopping Center, Inc., a corporation owned by the Beaty family and of which Mrs. Anna C. Beaty is the principal stockholder and a director, about six acres of land bounded on the west by Beaty Street and on the south by Cherry Road. This conveyance was made without restrictions and without reference to any other property belonging to Mrs. Beaty. Shortly thereafter the shopping center was developed. It now contains a supermarket, a furniture store, a drugstore, a hardware store and real estate office. Beaty Street separates the shopping center from plaintiff's property.

Mrs. Anna C. Beaty still owns a number of lots near plaintiff's property. Most of the other lot owners in the immediate vicinity, some of whom hold their property without any restrictions, have attempted to release plaintiff's property from the restrictions contained in her deed. The members of

the Beaty family have refused to go along with this plan to remove the restrictions. In fact, when the owner of the lot at the northwest corner of North York Avenue and Charlotte Avenue attempted to use it for the sale and display of tombstones in violation of the restrictions on said lot, Mrs. Beaty promptly objected and the owner has agreed to discontinue the use of the lot for that purpose.

When plaintiff purchased her property in 1935, the 133-acre tract was used by the Beaty family as a farm. To the northeast of her property across from what is now Beaty Street there was a pond surrounded by trees. From 1933 through 1935 the Beaty children sold tickets to the public for swimming privileges in this pond. To the northeast of the pond was a red barn from which hay was sold during the winter months. The operation of the farm has long since been discontinued. The barn has been torn down and the pond filled in. This area is now a part of the shopping center property. To the east and northeast of the shopping center there is now a well developed subdivision with attractive homes. The lots immediately to the north of plaintiff's property were vacant at the time of her purchase. Residences have now been built on all of them. The owner of one of these lots operates a small furniture business from the garage to the rear of his house. When plaintiff purchased her property, there were two or three houses fronting on Charlotte Avenue across the street to the west. Residences have now been erected on the other lots. In one of these there is a real estate office. Within the same block at the corner of North York Avenue and College Avenue, a chiropractic clinic has been built on an unrestricted lot. All of the lots on the southern side of Cherry Avenue across from plaintiff's property were vacant at the time of her purchase with the exception of one on which there was an abandoned service station which at times has been used for the sale of beer and sandwiches. The service station has now been enlarged, modernized and reactivated. A soft drink bottling plant is now operated on the lot to the west of the service station. To the

east of the service station several of the vacant lots have been leased from time to time as a nursery sales yard and commercial peach shed. Continuing further to the northeast there are residences, a fire station and a church. Still further east and adjacent to the Broad Acres subdivision there are a number of commercial enterprises.

We have not attempted to give a detailed review of all the conveyances made in the three Beaty subdivisions heretofore mentioned, nor have we sought to give all the changes that have taken place in this neighborhood since plaintiff purchased her property. Indeed, it would be difficult to do so as we have not been furnished with a composite plat of the area. The sketch appearing on page 376 of the transcript, entitled Complaint Exhibit "C", which was attached to the report of the Referee, will be found helpful in understanding the situation as it exists today. Let this sketch or diagram be published along with the opinion.

On the question of change in conditions, the Referee summarized his findings as follows:

"I find as a fact that, considering the area within the Beaty properties as a whole, at the time of plaintiff's purchase there were only three enterprises which could be considered to be of a commercial nature. These consisted of the limited operations of (1) the swimming pool, (2) the hay store and (3) the abandoned filling station. Within this area there are now fifteen business or commercial ventures and an additional three lots which in the past have been used for commercial purposes. Plans are under way to increase the number of businesses immediately adjacent to the plaintiff's property and, in addition, there are two churches and a fire station.

"I find as a fact that within 900 feet of plaintiff's property in the area lying outside of the Beaty property to the southwest, there was only one small grocery at the time of plaintiff's purchase. This area now contains eleven business or commercial ventures. A highway in front of the plaintiff's

1-Caroll Beverage Co.      10-Hobby Shop
2-Shell Service Station    11-Beauty Shop
3-Vacant -Formerly Nursery 12-Restaurant
   Peach Shed              13-Bus Station
4-Westbrook Sales          14-Drug Store (Construction)
5-Elder Real Estate        15-Furniture Store
6-Wylie Marble Co.         16-Crown Gas
7-Chiropractic Clinic      17-Workman-Greene
8-Ionce Motors             18-Coca-Cola Bottling
9-Sewing Center

Business Property
Owners releasing restrictions (Ave.)
Vacant Land
Businesses releasing restrictions (see)

Owners of vacant land releasing
Vacant land used for Business (see)
Church Property

property has been designated U. S. Highway No. 21 'Business' and has, due to the increased traffic load resulting from the expansion of the city of Rock Hill, been considerably widened in recent years to a width of over 90 feet. Taken as a whole the entire area, formerly containing at the most four modest business ventures, now contains twenty-six businesses of varying sizes and types with plans for continued expansion.

"I find as a fact and conclude as a matter of law that the area surrounding and including plaintiff's property has undergone so radical a change in character as to practically destroy the essential object and purposes of the restrictions governing plaintiff's property. I further find as a fact that the area on both sides of Cherry Road from Evergreen Circle to Oakland Avenue is principally business in character and that plaintiff's property is no longer suitable for residential purposes. I further find as a fact that the continued enforcement of the restrictions on plaintiff's property will result in substantial damage to the plaintiff without materially benefiting the defendant, Anna C. Beaty, or any of her subsequent grantees."

The record fully justifies the finding of the Referee, sustained by the Circuit Judge, that the immediate area around plaintiff's property was not developed in accordance with a general plan or uniform scheme of restrictions. The question of whether there has been a radical change in the character of the neighborhood since plaintiff purchased her property presents more difficulty, particularly in view of the fact that admittedly there were some nearby commercial activities when she purchased her tract of land. However, after careful consideration of the record, we do not feel warranted in disturbing the concurrent factual findings by the Referee and Circuit Judge with reference to a change in conditions. The Referee who inspected this area had a better opportunity of getting an over-all picture than can be obtained by us from the testimony and the exhibits.

We do not agree with appellants that in determining whether there has been a radical change in conditions, the Court is restricted to the area within the tract conveyed to plaintiff and cannot consider the area surrounding her property. We do not think *Martin v. Cantrell*, 225 S. C. 140, 81 S. E. (2d) 37, cited by appellants, requires such a strict limitation. The principles there laid down do not apply to a single lot or parcel of land but to the general development and division of a larger tract of land, such as one of Mrs. Beaty's subdivisions.

We now consider the legal result of the foregoing findings. The only effect of the lack of a general scheme of development is that there was not created a negative equitable easement in which the various purchasers of the lots have an interest and between whom there exists mutuality of covenant and consideration. *Edwards v. Surratt*, 228 S. C. 512, 90 S. E. (2d) 906. Accordingly, none of those who are represented in this action as a class have any standing to enforce the restrictive covenant under consideration. But Mrs. Beaty occupies a different position. She had a right to impose restrictions on a portion of her property without creating any obligation to restrict the remainder. *Edwards v. Surratt, supra.* The fact that she did not develop the immediate area around plaintiff's property in accordance with a general scheme does not affect any right she may have to enforce the restrictions against plaintiff. This is true even if, as found by the Referee, the covenant was personal to her. 14 Am. Jur., page 651. There is, therefore, presented the vital question, which has given us considerable concern, as to whether in this action for declaratory relief by the grantee against the grantor of this deed, the Court is justified in extinguishing the covenant between these parties.

The question of whether the courts of this State should entertain an action for affirmative relief from a restrictive covenant and, if so, under what circumstances, has not heretofore been presented. It is true that such an action was

brought in *Martin v. Cantrell, supra,* 225 S. C. 140, 81 S. E. (2d) 37, but the right to do so was not questioned by the defendants. Moreover, in that case the Court concluded that the restrictions were imposed pursuant to a uniform scheme of development and that there had been no radical changes in the surrounding area.

As pointed out in *Fidelity Title & Trust Co. v. Lomas & Nettleton Co.,* 125 Conn. 373, 5 A. (2d) 700, 701, "In an action for removal or relaxation of restrictions the issues are not the same as in one seeking to enforce them by enjoining breach thereof, and the judgment is more drastic." In *Booker v. Old Dominion Land Co.,* 188 Va. 143, 49 S. E. (2d) 314, 320, the Court said regarding such an action for affirmative relief: "Such a proceeding differs from a suit to enjoin a breach of the restrictions. There equity might refuse an injunction and remit a plaintiff to an action at law for damages, basing the refusal on the ground that an injunction would do great injury to the defendant and be of little value to the plaintiff. The relief here sought, if granted, would nullify the covenants, at least in plaintiffs' title, for all time and all purposes, even though future changes might completely remove the ground for doing so. More is required to warrant such a decree than is necessary when only the injunctive powers of equity are exercised. It must be established that the whole plan has become inoperative and that its objects can no longer be carried out." There is this further distinction: In an action by the covenantee against the covenantor for an injunction, there is brought before the Court the exact nature of the violation, thus enabling the Court to balance the equities between the parties and reach a just result, while in an action to remove the covenant, the Court is not apprised of the use which the covenantor intends to make of the restricted property.

       The earlier decisions rather uniformly held that ■ changed conditions could be invoked only as a defense to an action to enforce a restriction by injunction and

not as a ground for affirmative relief against such restriction prior to the breach thereof. The theory underlying this view is that contractual obligations do not disappear as circumstances change. However, the great weight of modern authority is that in an action under the declaratory judgment statute or one to remove cloud on title, affirmative relief may be granted against a restrictive covenant where there is such a change in the character of the neighborhood as to render the enforcement of the covenant valueless to the covenantee and oppressive and unreasonable as to the covenantor. In other words, the later cases hold that a change of conditions can serve not only as a shield, but also as a sword. American Law of Property, Volume 2, Sections 9.22 and 9.39; Powell on Real Property, Volume 5, Section 684; Annotation 4 A. L. R. (2d) beginning on page 1117; 14 Am. Jur. —Covenants, Conditions and Restrictions—Section 344.

In some jurisdictions permitting affirmative relief from a restriction, it is held that such relief should only be granted upon the condition that the covenantee is paid any damages sustained by him. *Lacov v. Ocean Avenue Building Corporation,* 257 N. Y. 362, 178 N. E. 559; *Hill v. Ogrodnik,* 83 R. I. 138, 113 A. (2d) 734, 114 A. (2d) 398. This has been particularly true where the action for extinguishment of the covenant was brought by the covenantor against the covenantee. In *Lacov v. Ocean Avenue Building Corporation, supra,* which involved such an action, the Court said: "Under such circumstances, a court of equity should not grant the relief, unless the covenantor places the trial court in possession of evidence from which it can formulate a decree which will work full justice to the covenantee. The granting of the relief prayed for should be awarded only in case the covenantee can be compensated, in the decree, for any substantial damage suffered, and the granting of such relief should be conditioned upon the payment of the damages awarded."

It thus appears that in an action to extinguish a restrictive covenant, the party seeking to remove same is required to produce much stronger proof than in cases involving only injunctive relief. In this situation the Court is more cautious since the remedy is more drastic. We also think that a covenant between two parties affecting a single parcel of land more closely resembles an ordinary contract than does a covenant imposed as a part of a general plan of use for subdivision. Consequently, such a covenant is less amenable to equitable jurisdiction.

In the light of the foregoing considerations, we shall now undertake to determine whether under the facts here presented the restriction in controversy should be extinguished. At the outset it is to be noted that it is not a general covenant against commercial use but one extremely limited in its restrictive force. What is prohibited is not any kind of commercial use of the property, but the use of a building for a store or for the conduct of mercantile business.

We have concurrent findings of the Referee and Circuit Judge that the area surrounding plaintiff's property "has undergone so radical a change in character as to practically destroy the essential object and purposes of the restrictions governing plaintiff's property", and that the continued enforcement of this covenant would not be of any benefit to Mrs. Beaty but would substantially damage the plaintiff. Considering the character of the neighborhood, the limited effect and purpose of the restriction and the nature of Mrs. Beaty's property holdings in the immediate vicinity, we cannot say that these concurrent findings are against the greater weight of the evidence. We are unable to see in view of all the circumstances how the violation of this covenant could give rise to any damages properly recoverable by Mrs. Beaty either now or in the future.

Appellants offered testimony to the effect that the area now occupied by the shopping center was originally reserved for commercial use and they say that

regardless of any changed conditions, any commercial use by the plaintiff of her property would materially injure the commercial value of the shopping center. If this was the purpose of the covenant, it would seem that it would have been one against general commercial use instead of being highly limited in its restrictive force. Apart from this, however, the overwhelming weight of the evidence shows that the purpose of this restriction was to preserve this area as a residential section. It was not designed to protect Mrs. Beaty against commercial competition. This being so, it cannot now be used to enable her to obtain a monopoly with respect to the business enterprises that might be introduced into the area. *Price v. Anderson,* 358 Pa. 209, 56 A. (2d) 215, 221, 2 A. L. R. (2d) 593. As there stated: "The language of a deed must always be interpreted in the light of the apparent object or purpose of the parties and of the conditions existing when it was executed."

There remains for consideration the contention that the Court erred in relieving plaintiff of her covenant as to the use of her property while continuing to hold Mrs. Beaty bound by her covenant as to the 42-foot strip. As to this strip, the Referee found:

"Upon examination of the entire transaction as it appears from the testimony, I am at a loss to discern a reciprocal covenant in relation to the 42-foot strip. I find as a fact that the 42-foot strip was not reserved by the defendant, Anna C. Beaty, in reliance upon the restrictive covenant. I further find as a fact that the said 42-foot strip has been maintained as a road for the convenience of the defendant Anna C. Beaty and her successors in title to the land surrounding plaintiff and is of incidental benefit only to the plaintiff."

The foregoing strip has now been incorporated into the parking area of the shopping center and has lost its identity. There is no exception by any of the parties to the foregoing finding of the Referee. Since he has held that the covenant as to the 42-foot strip is of no real benefit to plaintiff, it

would appear that she has no standing to enforce same. When the plaintiff bought this property, she did so for residential purposes. Shortly thereafter she built a large home on it. She now seeks to remove the restriction as to residential use in connection with which doubtless the covenant was made. This being true, the covenant as to the 42-foot strip has, so far as the plaintiff is concerned, lost its purpose, and may not be enforced by her or anyone holding under her.

We conclude that under the concurrent findings of the Referee and Circuit Judge, which we are not warranted in disturbing, that the covenant in controversy should be extinguished. Of course, this applies only to the lot now owned by plaintiff. Nothing said herein shall be construed as affecting the integrity and validity of the restrictions on other lots or property.

Affirmed.

TAYLOR, C. J., Moss and LEWIS, JJ., and J. B. NESS, Acting J., concur.