## 19664

Barbara G. ABBOTT and Dean Abbott, Appellants, v. Joe ARTHUR and 97 other named Defendants, Individually and as representing the class of all persons, corporations or others having or claiming any interest in any of the property described in Plat of Walden Estate Development, etc., Respondents.

(198 S. E. (2d) 261)

*Claude R. Dunbar, Esq.,* of Spartanburg, *for Appellants,* cites:

*Messrs. Cauthen & Eubanks,* of Spartanburg, *for Respondents,* cite:

*Claude R. Dunbar, Esq.*, of Spartanburg, *for Appellants*, in Reply.

July 17, 1973.

*Per Curiam:*

This case is before us on appeal from the order of the Honorable George T. Gregory, Jr., presiding judge of the Court of Common Pleas for Spartanburg County. We are of the opinion that his order properly sets forth and disposes of all of the issues raised on the appeal to this Court. Let his order, with minor deletions of matters not necessary to disposition of the issues, be printed as the directive of this Court.

## ORDER OF JUDGE GREGORY

This is a class action brought by the Plaintiffs against the Defendants, all of whom are owners of property situated in a restricted subdivision known as "Walden Estates" in Spartanburg County, South Carolina. The Plaintiffs request that the Court declare the rights of all parties to the action in relation to the use of their property in said subdivision and that the court approve the construction of a building on the Plaintiffs' lots in the Subdivision for commercial and business use. By their Reply (filed subsequent to the Answer and Counterclaim of the Defendants), Plaintiffs further seek to have restrictions against business or commercial use of their property removed and released by a declaration that said restrictions have no binding effect

thereon. Certain of the Defendants timely answered, and among other things, seek to enjoin the Plaintiffs' use of their subdivision property for any business or commercial purpose due to Restrictive covenants thereon which give to the Defendants a negative equitable easement over Plaintiffs' property, and mutuality of covenant therein.

\* \* \*

The matter comes before me on timely Exceptions by the Defendants to the Report of the Master in Equity for Spartanburg County dated September 13, 1972. Counsel for Plaintiffs and Defendants have argued the exceptions before me, and I have carefully digested the record of proceedings and the evidence introduced.

## FINDINGS OF FACT

In 1955, Andrew Russell Walden, owner of certain property located north of the City of Spartanburg in Spartanburg County, South Carolina on U. S. Highway No. 29, subdivided his property as will be shown by reference to plat by James B. Baker, R. L. S., dated November 12, 1955 and recorded in the RMC office for Spartanburg County in Plat Book 33 at pages 438-443. Mr. Walden thereafter restricted the use of the subdivided property by Restrictive Covenants dated and recorded January 14, 1956, in Deed Book 21-Z at page 451, in the RMC office for Spartanburg County. The pertinent portions of the restrictions are as follows:

"*Whereas,* Andrew Russell Walden is the owner of the tract of land lying just southwest of the intersection of U. S. Hwy. No. 29 and S. C. Hwy. No. 41 in Spartanburg County, South Carolina, shown on plat made by James B. Baker, Surveyor, and recorded in Plat Book 33, pages 438-443, RMC for the County and State aforesaid; and,

*Whereas,* the said Andrew Russell Walden has subdivided the tract for development as an exclusively residential suburb:

*Now,* in consideration of the mutual advantages deriving therefrom, the undersigned, Andrew Russell Walden, for himself, his heirs, executors, administrators and assigns, covenants and agrees as follows:

1. All lots as shown on the said plat, except lots Nos. 1 and 52, shall be used for residential purposes only, and no building or structure of any kind whatsoever shall be erected, constructed or maintained on any lot except single-family private dwelling houses, each dwelling house being designed for occupancy by a single private family. Only one single-family dwelling house shall be built upon each lot, but any person may use one lot and a portion of another lot, or may use two or more lots, placing one residence thereon. No apartment house of any type, including a duplex or multi-dwelling apartment or garage apartment, shall be erected or maintained on any lot except that this restriction shall not prevent occupancy in garages by domestic servants employed by the resident owner or tenants.

13. All persons hereafter accepting conveyance of any of the lots shown on the plat referred to (to it, and the record therefor, reference is made for a completer description) shall accept the same upon and subject to the above enumerated conditions, covenants, restrictions, and reservations which are to be deemed covenants running with the land, and binding upon the Grantees, their heirs and assigns; and violation of the conditions or restrictions shall vest in the Grantor, its successors and assigns, all rights of abatement and suit in law or in equity againt any person or persons violating or attempting to violate any condition or restriction, either to restrain such violation or to recover damages.

14. These covenants, restrictions and conditions shall continue in full force and effect until January 1, 1985, . . ."

Various lots were thereafter sold subject to the Restrictive Covenants, and Walden Estates has developed into a residential community of approximately fifty homes on the eighty-six lots shown on said plat. Some of the owners, in-

cluding the Plaintiffs and certain Defendants, own more than one lot in the subdivision. Only lots Nos. 1 and 52 as shown on the abovementioned plat were reserved for business use. Lot No. 1 was then all the way across a 200 foot highway right-of-way and is presently being used for business. Lot 52 is a triangular shaped lot upon which the subdivision sewer system is housed.

The plaintiff, Barbara G. Abbott, purchased Lots Nos. 2 and 3 on the abovementioned plat by deed dated February 13, 1970, and recorded in Deed Book 36-P, page 632, RMC office for Spartanburg County, which deed contained a reference to the Restrictive Covenants above set forth.

In 1956, U. S. 29 was a two-lane bypass around the City of Spartanburg, having a right-of-way of 200 feet which had been acquired prior to the subdivision. The Highway at the time of the subdivision was 24 feet in width with 112 feet of the right-of-way situated on the side of the Highway adjacent to Walden Estates and 64 feet on the side of the Highway opposite Walden Estates. Obviously, Interstate 85 was already on the planning boards when the restrictions were imposed on the subdivided property, and Mr. Walden could have then elected to use the property for commercial purposes, but he elected not to do so.

Subsequent to the development of the property as a residential Subdivision, Interstate 85 was completed around 1960, and in conjunction with Interstate 85, a frontage road has been situated immediately adjacent to the northern portion of Walden Estates. A portion of the property which was later purchased by the Plaintiffs (lots 2 and 3 as shown on the abovementioned plat) was taken for the right-of-way of an exit road off Interstate 85 and said Frontage Road. As will be shown by reference to the aerial photograph and the abovementioned plat, Walden Circle is a "U" shaped road upon which all of the lots in the subdivision front except lot No. 2, one of Plaintiffs' lots, which is on the Frontage Road. Both ends of the "U" terminate at said Frontage

Road. There is no other means of ingress or egress to the subdivision. Use of Plaintiffs' property for business purposes would definitely increase the traffic flow on the frontage road, thus creating a more hazardous situation for Walden Estates residents in getting into and out of their subdivision by vehicle. Conceivably, the traffic in the subdivision itself could also be increased.

From the testimony and evidence presented, it is obvious that the predominant use of the property in the subdivision is for residential purposes in accord with the restrictions imposed thereupon. Three of the property owners within the subdivision, in conjunction with the use of their property as residences, also use their property to grow various plants, flowers and vegetables, some of which are sold to the public within the subdivision itself, and some of which are sold outside of the subdivision. No objection to this use of the subdivision property has ever been made by any other resident or owner. These violations are of a minor nature and are not substantial, substantive violations. Certainly, business use of this residentially restricted property does not run rampant throughout the subdivision, and all claimed business use is in conjunction with use of the property as a residence. It is true that by proper releases, the residents of Walden Estates have allowed certain subdivision lots to be used as a church and as a Masonic Lodge. These uses appear to be in keeping with the residential development. Though I did not personally view the subdivision, the findings of the Master are conclusive that Walden Estates is a residential subdivision containing well-kept homes and yards. Nothing in the record disputes this conclusion. It is common knowledge that restrictive covenants enhance the value of residentially subdivided property, and I find that the restricive covenants here have benefited the property owners in Walden Estates by controlled orderly development into a residential community.

There is no doubt that Plaintiffs' property would be valuable for commercial purposes due to easy access from the

Northbound lane of Interstate 85 which is a major traffic artery now carrying some 20,000 vehicles each day in both directions. There is no showing, however, that the traffic increase on Interstate 85 has been greater than the general increase of traffic throughout the county. There also is no doubt that Plaintiffs' property is worth somewhat less for residential purposes than property further into the subdivision away from I-85, but the Plaintiffs' expert witnesses admitted that any one desiring to could erect a home on the Plaintiffs' lots. The actual lay of the land is virtually the same as when originally subdivided and the only difference is the access from the frontage road which took a small portion of certain lots including Lots 2 and 3. The Plaintiffs' lots have changed hands three or four times since I-85 was opened which indicates that certain persons were interested at one time or another in building a residence there. The Plaintiff knew of the restrictive covenants over the property when she purchased it due to the recitation in her deed, and her husband who testified stated that he had knowledge of the residential restrictions before he purchased and placed the property in his wife's name. It is doubtful that a commercial price was paid by the Plaintiffs for the property.

I find that the general scheme of improvements inaugurated by Mr. Walden when he subdivided and restricted Walden Estates enhanced the value of each lot therein, thus attaining the purpose intended by him. Conversely, the character of the development as it is today would not have been possible without the imposition of the restrictions. There has been no substantial breakdown or deviation from the general residential scheme within the subdivision itself and the restrictive covenants have been substantially maintained by the residents of Walden Estates.

The factual situation in this case is not unlike the situation in the case of *Flinkingshelt v. Johnson,* 258 S. C. 77, 187 S. E. (2d) 233, and I find here, as the Court did in

that case, that the restrictive covenants have benefited and will continue to benefit owners and subsequent purchasers of property within the subdivision and should, therefore, be enforced. To do otherwise would be to cause certain erosion of the restrictions by further encroachment by business into the residential subdivision.

## CONCLUSIONS OF LAW

In the case of *Flinkingshelt v. Johnson,* 258 S. C. 77, 187 S. E. (2d) 233, the Order of Judge Ness which was adopted by the Supreme Court at page 238, states:

"In essence, plaintiffs' contentions are premised on the fact that on unrestricted, adjoining and nearby property there have been commercial developments and there has been an increase in the amount of traffic and enlargement of the width of the highway which forms the boundary of the restricted area. It is obvious that any restricted area, whether it be residential or industrial, must have a demarcation line; it must end somewhere. Where the restricted area ends, other unrestricted development will or may foreseeably occur. To hold that commercial development in an unrestricted area adjoining a restricted area would allow the lifting of the residential restrictions as to property adjoining or in the vicinity of the unrestricted area, would be to expose all restrictions to eventual invalidation. It would remove the sanctity of long standing, long respected contractual agreements and place them at the whim of parties not privy to the agreements."

The findings and conclusions of law above set forth are applicable to this case. Here, however, the Plaintiffs also contend that there has been a breakdown of restrictions within the subdivision itself due to the growing and sales of plants, vegetables and azaleas by three residents therein. These activities in Walden Estates fall into the category of the business activities in the case of *Pitts v. Brown,* 215

S. C. 122, 54 S. E. (2d) 538; and *Holling v. Margiotta,* 231 S. C. 676, 100 S. E. (2d) 397. In the *Holling* case, 100 S. E. (2d) at page 399, we find:

"Defendants appeal and first contend that the character of the subdivision has so changed by the development of businesses nearby that it is inequitable to now enforce the covenants. Across the highway there are business establishments, but they are not within the boundaries of the subdivision. *Martin v. Cantrell,* 225 S. C. 140, 81 S. E. (2d) 37. In it (the residentially restricted subdivision), there have been allowed a tourist home in a residence on the highway, a radio and T.V. shop in the garage at another residence, and one resident does automobile repairs gratis for his friends. *These activities are inconsequential and have not changed substantially the residential character of the subdivision."* (Emphasis mine.)

The petty businesses carried on by three of the residents in Walden Estates do not open the door to commercial expansion, since the residential character of this subdivision has not changed.

An analogy of how far Equity will go to sustain protective covenants can be seen in the case of *Easterly v. Hall,* 256 S. C. 336, 182 S. E. (2d) 671. In that case, the Defendant was not seeking to use his property commercially, but was seeking to construct a duplex on property restricted for single-family residences. The Court there found that each purchaser had a mutuality of covenant and consideration and a negative equitable easement was created by the restrictions in all of the lots of the subdivision.

In the case of *McDonald v. Welborn,* 220 S. C. 10, 66 S. E. (2d) 327, it was held that:

"The law imputes to a purchaser of real estate, notice of the recitals contained in the written instruments forming his chain of title."

The Plaintiffs here knew of the restrictive covenants when the property was purchased and thus had knowledge

of Mr. Walden's scheme of improvements for the subdivision. The *McDonald* case affirmed *Sprouse v. Winston,* 212 S. C. 176, 46 S. E. (2d) 874, finding that:

"Where a common Grantor opens up a tract of land to be sold in lots and blocks, and, before any lots are sold, inaugurates a general scheme of improvements for such entire tract intended to enhance the value of each lot, and each lot, subsequently sold by such Grantor, is made subject to such scheme of improvements, *there is created and annexed to the entire tract what is termed a negative equitable easement, in which the several purchasers of lots have an interest and between whom there is a mutuality of covenant and consideration* . . . (Emphasis mine).

"Such restrictions may be enforced by any grantee against any other grantee, either on the theory that there is a mutuality of covenant and consideration, or on the ground that mutual negative equitable easements are created."

The record in this case shows no fundamental change in the residential character of Walden Estates which would make inequitable the enforcement of the restrictions. (Cf. *Dunlap v. Beaty,* 239 S. C. 196, 122 S. E. (2d) 9.)

While the Plaintiff professes to want only a fruit stand, nothing would bar him from conveying his property at a proper commercial price to any type of business, or developing any type of business himself, once the restrictions were removed. Further encroachment of business into the subdivision would be forthcoming.

"It is a matter of common knowledge and human experience that if the restrictive bars are let down in this case, the business encroachment on the remainder of the subdivision would be a matter of gradual yet steady development, against which the homeowners would be helpless and the benefits and protection of the restrictive covenants would eventually be entirely lost." *Pitts v. Brown, supra.*

Again referring to the Order of Judge Ness in the case of *Flinkingshelt v. Johnson, supra,* 187 S. E. (2d) at page 239, it is stated:

". . . once this subject property is 'unrestricted', owners of other residential property fronting on Pleasantburg Drive would, with justification, be able to come into court and point to a change of conditions—not of unrestricted adjoining property but a change of conditions of property within the original restricted area; thus giving them a much stronger case for modification than they presently have. Allowance of the relief sought by the plaintiffs in this case either with or without protective conditions, would be like a cancer in the residential area. Where the growth of the cancer would stop is difficult to predict but it is not difficult to predict that persons who have made substantial investments in reliance on the restrictions would suffer . . ."

The case of *Dunlap v. Beaty,* 239 S. C. 196, 122 S. E. (2d) 9, is relied upon by the Plaintiffs to sustain their position. The factual situation in the *Dunlap* case is totally unrelated to the facts appearing in this case and therefore the case is distinguishable, there having been no substantial changes in the character of the neighborhood. Also, the decision in the case of *Price v. Anderson,* 358 Pa. 209, 56 A. (2d) 215, was predicated upon changes in the dominant character of the neighborhood itself and again, there have been no such changes here. The protective covenants on Walden Estates are neither oppressive and unreasonable to the Plaintiffs nor valueless to the Defendants in this case.

A review of the recent aerial photograph introduced by the Plaintiffs into evidence shows conclusively that there are few, if any, businesses in the immediate area adjacent to Walden Estates. While there are businesses across I-85, the Highway itself acts as a natural barrier due to its limited access.

"Slight expansion to commercial business beyond the subdivision does not effect or in any way change the residential character of the subdivision." *Pitts v. Brown, supra.*

In the record, much was made of the fact that the main objection to Plaintiffs' business use came from the Defendants who were growing and selling plants

and vegetables, and some of whom had already signed Plaintiffs' petition to allow the fruit stand. These same Defendants later signed another petition against business use of the subject property. Since the petitions attached to the complaint and answer are not legal or binding in form, the Defendants had the right to change their minds. It is well settled that one is not estopped from enforcing restrictions just because he has previously allowed minor deviations therefrom by another. *Pitts v. Brown, supra.* I believe it to be equally true that one who has previously violated restrictive covenants in an inconsequential manner, and who is willing to cease such violation (as are the Defendants here) is not estopped from attempting to enforce such covenants against another seeking to destroy them, because the equities of such a situation are not equal. At any rate, estoppel was neither plead nor proved by the Plaintiffs here.

While each of the Defendants' Exceptions to the Master's Report have not been individually discussed herein, the following Order is appropriate and is effectively dispositive of all Exceptions.

*It is therefore ordered, adjudged and decreed* that the residential restrictions dated January 14, 1956, and recorded on that date in Deed Book 21-Z at page 451, RMC office for Spartanburg County are valid and enforceable as to all of the lots in Walden Estates Subdivision including the property of the Plaintiffs.

*It is further ordered* that the property of the Plaintiffs may be used only in accordance with the restrictions.

*It is further ordered* that the Master's Report dated September 13, 1972, where inconsistent with the above is *reversed* and the Defendant's Exceptions thereto are *sustained.*

The Plaintiffs are assessed the costs of this action.

And it is so ordered.