16236

PITTS v. BROWN ET AL.
(54 S. E. (2d) 538)

124

*Messrs. Hingson & Todd,* of Greenville, *for Appellant,*

*Messrs. Mann & Arnold,* of Greenville, *for Respondents,*

July 12, 1949.

FISHBURNE, Justice.

This is a suit in equity instituted by the appellant to restrain the respondents (defendants below) from erecting upon their lot, adjoining that of appellant, a business building, in violation, as appellant claims, of restrictions contained in conveyances of their respective premises from a common vendor, to whom their titles are traced through mesne conveyances. The lots in question are located in a subdivision known as Sans Souci Villa, situated about two miles outside of the city limits of Greenville. The paramount issue to be decided is whether the use and occupancy of the property is limited to residential purposes only.

When the cause came on for hearing, the parties waived a reference and agreed that the trial court should hear the evidence, find the facts, and render its judgment thereon. This was done, and the court held that the various deeds

out of the common grantor, The Suburban Land Company, contained no uniformity of restrictions applicable to the entire subdivision; and it was adjudged that no general building scheme having been founded on restrictions, they were not enforceable. The court dissolved the preliminary injunction previously granted and dismissed the complaint. From this judgment M. H. Pitts prosecutes this appeal.

In 1911, the Suburban Land Company, having acquired a tract of land near the city of Greenville, consisting of twenty-five and 97/100 acres situate on the North side of Buncombe Road, had the property surveyed and divided into five blocks, containing fifty-eight building lots. The plat, which was duly recorded, shows the shape of the respective lots, their numbers and dimensions, and the newly opened streets upon which they are located. The Suburban Land Company constructed sidewalks, provided public utilities, and ultimately sold all of the lots by various deeds from 1911 to 1920. Most of the lots were sold, however, during the first two or three years.

The Suburban Land Company obtained title to this tract from J. W. Gray, Master, by deed dated May 4, 1911, in a partition proceeding involving a part of the lands belonging to what was known as the Perry Estate. The suit was brought, seeking approval by the court of a contemplated sale of the property to a real estate company for division into lots for a residential district. The court approved the sale, and in its decree imposed certain restrictions on the property to be conveyed, one of which was that "No part of the real estate shall be used for any other purpose than as sites for dwelling houses."

The decree of the court further provided that no part of the lands conveyed should be sold, devised, leased or otherwise disposed of to persons of African descent; and that no dwelling house should be erected thereon costing less than Fifteen Hundred Dollars; these restrictions to bind the pur-

chasers, their heirs and assigns, and all other persons holding under them.

The two lots with which we are concerned are located in Block A of the subdivision. Block A contains lots numbered from one to fourteen. Lot No. 10 fronts on Brockman Avenue, with its Southern boundary on Buncombe Road. The respondents purchased the rear portion of this lot on March 1, 1947. It has a frontage on Buncombe Road of seventy feet and a depth of eighty eight feet.

May 20, 1947, the appellant acquired title to the lot known as 9B, immediately adjacent to Lot No. 10, and fronting on Buncombe Road. On appellant's lot there is a large, well kept dwelling house in which he resides and for which he paid $8,000.00. There is also a large two-story dwelling house on Lot No. 10, fronting on Brockman Avenue, but there is no building on the rear portion of Lot No. 10. The respondents were undertaking to construct a business building thereon and were prevented from doing so only by the preliminary injunction granted by the trial judge.

There are no restrictive covenants in the deeds under which appellant and respondents obtained title to their respective lots from their immediate grantors. The restrictions by which they are bound, are contained in the conveyances from the common grantor to their predecessors in title.

All deeds by The Surburban Land Company conveying lots in Sans Souci Villa were introduced in evidence. The following restrictions were imposed on Lot No. 10, the rear portion of which is now owned by respondents: (a) The property should not be sold, rented or otherwise disposed of to persons of African descent; (b) No house to be built on the lot costing less than Fifteen Hundred Dollars; and (c) that anything that would constitute a nuisance or injure the value of any adjoining lots will not be permitted.

The foregoing restrictions were likewise imposed on Lot No. 33. And identical restrictions were imposed on Lots

Nos. 14, 32 and 37, except that with reference to the three last named lots there is the additional restriction that no building shall be erected thereon nearer than the building line shown on the plat, which building line is twenty five feet from all sidewalks.

The restrictions placed on Lots Nos. 6, 8 and 9, which are now owned by appellant and designated as Lot No. 9B, are identical with those imposed on Lots Nos. 14, 32 and 37 above mentioned, except that in the deed from the original grantor there is no provision that any thing which would constitute a nuisance or injure the value of any adjoining lot will not be permitted.

The respondents admit that they contemplate the erection of a building on their lot which is to be used for business and not for residential purposes. They raise the issue that the lots contained in the entire subdivision are not subject to any uniform restrictions, that this lack of uniformity is evidenced by the fact that restrictions vary as to certain lots and are omitted as to others, and are therefore unenforceable. Appellant contends that there was a general building scheme inaugurated for the use and occupancy of the property for residential purposes only; and that the variations and omissions with reference to restrictions are so slight and negligible as not to affect the general uniformity of the restrictive covenants which were imposed on the various lots for the protection and mutual benefit of all lot purchasers.

The record shows that in disposing by deed of the fifty eight lots composing Sans Souci Villa, The Suburban Land Company imposed restrictions on fifty two of them. While the restrictions varied slightly in eight of the conveyances, they were identical in forty four of them; and all of the fifty two lots were restricted to the erection of houses costing not less than $1,500.00, and as to use by and conveyance to negroes. Six lots of the fifty eight were conveyed without any restrictions.

The trial court overruled appellant's contention and held that there was no uniform scheme of development, no mutuality in restrictions, and that no negative easement had been established. We are unable to agree with the conclusion reached by the trial court.

It is undisputed, as bearing upon a neighborhood building scheme, that although the property was subdivided and all lots sold by 1920, yet in 1948,—twenty-eight years later, —and now, there are well kept residences on each and every lot in the subdivision. This, we take it, is well nigh unanswerable evidence that the general plan of a residential neighborhood has been maintained since its inception and that this general understanding of use and occupancy has been accepted, relied on, and acted upon by all of the lot owners. We think that the scheme from the beginning contemplated that no part of the Sans Souci tract should be used for commercial purposes. And an examination of the evidence completely confirms this view. The salient facts are not in dispute, and we are unable to regard an enterprise which has been developed in the manner stated as not embracing the necessary elements of a general scheme or plan to subject the several lots in the tract to the operation of unform restrictions.

As said in the case of *Hooper v. Lottman,* Tex. Civ. App., 171 S. W. 270, 272:

"Uniformity in the restrictions imposed on the lots is one of the strongest proofs of the existence of a building scheme. It is an evidentiary matter only, however, and any deviation from uniformity, as to restrictions imposed on any of the grantees, is often seized upon, as a defense to an action to enforce the covenant, on the theory that a general plan of improvement is not shown. There may, however, be departures from the usual restrictions in individual cases without destroying the integrity of the scheme of development as a whole. A want of absolute uniformity for reasons readily apparent does not militate against the view that the

restrictions in the deed were in pursuance of a general scheme for improvement of the property. *Coates v. Cullingford,* 147 App. Div. 39, 131 N. Y. S. 700; *Morrow v. Hasselman,* 69 N. J. Eq. 612, 61 A. 369. And although some of the lots may have written restrictions imposed upon them and others may not, yet if the general plan has been maintained from its inception, without material departure therefrom, and if it has been understood and relied upon by those concerned, it is binding and enforceable *inter sese. Allen v. Detroit,* 167 Mich. 464, 133 N. W. 317, 36 L. R. A., N. S., 890."

It is true that the restriction prohibiting anything that would constitute a nuisance or injure the value of any adjoining lots, is imposed only upon Lots 10 and 14 in Block A, and upon Lots 32, 33 and 37 in Block D. But this does not necessarily interfere with the integrity of a neighborhood scheme. Due to the location of these lots, it can readily be inferred that this was done in accordance with the plan and design of the common grantor for the benefit of the entire subdivision. Lot 10 and Lot 32 front on Buncombe Road, are situate respectively upon opposite corners of Brockman Avenue, and lie at the main gateway of the whole development. Lot 37 adjoins Lot 32 on the East and is located on the corner of Buncombe Road and Furman Road, thus lying at another entrance to the entire subdivision. Lot 14 is located on the corner of Brockman Avenue and Young Street.

The use made of these lots would strongly tend to fix the character of the use of the entire tract, and promote the sale of lots. On this record, the fact that additional restrictions were incorporated in the conveyance of these lots does not disrupt the general neighborhood scheme.

Neither the restricting of every lot within the area covered, nor absolute identity of restrictions upon different lots is essential to the existence of a neighborhood scheme. *Snow v. Van Dam,* 291 Mass. 477, 197

N. E. 224; *Storey v. Brush,* 256 Mass. 101, 152 N. E. 225; *Velie v. Richardson,* 126 Minn. 334, 148 N. W. 286; *Evans v. Foss,* 194 Mass. 513, 80 N. E. 587, 9 A. L. R., N. S., 1039, 11 Am. Cas. 171; *Putnam et al. v. Ernst,* 232 Mich. 682, 206 N. W. 527; 14 Am. Jur., Sec. 202, pp. 613, 614. But extensive omissions or variations tend to show that no scheme exists, and that the restrictions are only personal contracts. *Beals v. Case,* 138 Mass. 138; *Putnam v. Ernst,* 232 Mich. 682, 206 N. W. 527, 26 C. J. S., Deeds, § 167, page 553.

Many other cases illustrating the point under discussion are to be found in Annotations, 21 A. L. R. 1281, 1306; 89 A. L. R. 812, 4 A. L. R. (2d) 1364.

Respondents cite and rely upon the case of *Clark v. McGee,* 159 Ill. 518, 42 N. E. 965, 967, as being analogous and closely in point with the case at bar. We do not think that this case sustains the contention of respondents. The facts are radically different. In *Clark v. McGee, supra,* it appears that Dray, the original owner and proprietor of the tract of land, subdivided it into thirty eight lots, and it was claimed that a general scheme or plan was adopted in which all of the lots conveyed were to be subject to certain restrictions, which restrictions were intended for the benefit of the several lot owners. The court did not concur in that view, and stated:

"In the conveyance of the lots by Walter S. Dray, no two of the deeds executed by him contained the same restriction. They were similar, but not the same."

It likewise appeared in that case that two or three of the lots conveyed contained no restrictions whatever. The court held that the variance in the terms and conditions of the restrictions destroyed the uniformity essential to establish a general plan.

This is not the situation here. Fifty two of the fifty eight lots into which the tract was subdivided contain restrictions;

forty four contain exactly the same restrictions, and only six contain no restrictions at all. It cannot reasonably be said that the omissions were extensive or that the variations were more than negligible. They did not destroy the general plan which appears to us to be self evident.

■ Respondents point to three negligible violations of the restrictive covenants: the operation of a small flower shop in the rear of one residence, a small garage behind another dwelling house, and a refrigerator and stove repair room in the back of another residence.

But the violation of some of the restrictions by some of the purchasers of lots in the tract, without action by appellant, does not affect his right to enforce the restrictions against the respondents. *Snow v. Van Dam,* 291 Mass. 477, 197 N. E. 224; *Bacon v. Sandberg,* 179 Mass. 396, 60 N. E. 936.

The record shows beyond dispute that there has been no fundamental change in the residential character of the Sans Souci Villa development making inequitable the specific enforcement of the restrictions.

■■ Nor does the failure of the appellant to object to the small, petty businesses above mentioned bar him from objecting to the construction and operation of a commercial building on respondents' lot, which would be immediately adjacent to his dwelling house. *Deitrick v. Leadbetter,* 175 Va. 170, 8 S. E. (2d) 276, 127 A. L. R. 849; *Fenton v. Malfas,* 286 Mass. 339, 190 N. E. 540. It is a matter of common knowledge and human experience that if the restrictive bars are let down in this case, the business encroachment on the remainder of the subdivision would be a matter of gradual yet steady development, against which the home owners would be helpless, and the benefits and protection of the restrictive covenants would eventually be entirely lost.

The record does not disclose, as contended by respondents, that there has been any substantial charge in the essential character of the neighborhood so as to make it impossible to accomplish the purposes intended by the restrictive covenants. It is true that two or three businesses within the past ten years or more have been established and operate beyond the subdivision on the other side of Buncombe Road, upon which the lots of appellant and respondents front, indicating a negligible expansion of commerce in the neighborhood of Sans Souci Villa, but this slight expansion does not affect or in any way change the residential character of the subdivision.

As was said in *Rombauer v. Compton Heights Christian Church*, 328 Mo. 1, 40 S. W. (2d) 545, 553: "No hard and fast rule can be laid down as to when changed conditions have defeated the purpose of restrictions, but it can be safely asserted the changes must be so radical as practically to destroy the essential objects and purposes of the agreement." See, also, 14 Am. Jur., Covenants, etc., Sec. 305, pp. 648, 649, 26 C. J. S., Deeds, § 171, p. 575.

Numerous cases dealing with changed conditions as affecting the enforcement of restrictive covenants are discussed or cited in notes in 54 A. L. R., Page 812, 85 A. L. R., Page 985, and 103 A. L. R., Page 734. A full discussion of the subject is likewise to be found in *Booker v. Old Dominion Land Co.*, 188 Va. 143, 49 S. E. (2d) 314.

Respondents argue that there is no restrictive covenant upon the lot owned by appellant. But in our judgment, this contention is not sustained by the record. When the Suburban Land Company sold the plaintiff's lot in 1912, the deed of conveyance prohibited its use and occupancy by negroes, restricted the building to be erected thereon to a cost of not less than $1,500.00, and provided for a twenty five foot building line. Several years thereafter The Suburban Land Company reacquired the appel-

lant's Lot No. 9B, and in 1920 again conveyed it with the three original restrictions, together with two others, all of which restrictions were ·imposed for a period of twenty five years. At the time this action was commenced, the twenty five year limitation had expired, and in consideration of this the trial court held that appellant's property was freed of all restrictions.

However, the re-acquisition of the property by The Suburban Land Company and its subsequent re-conveyance with the twenty five year limitation, did not free appellant's lot from the original restrictions. As was said in *Wiegman v. Kusel*, 270 Ill. 520, 110 N. E. 884, 886:

"It is contended that because the lots of defendants in error had been repurchased by the original owner after the original deed was executed with this restriction and were a second time transferred by the original owner without any restriction as to this building line, under these circumstances the original restriction would not bind the defendants in error. We do not see how this would in any manner change the legal standing of the parties. Galbraith, when he re-purchased the lots, was in the same position as any other purchaser in the chain of title, and had no power by his second deed to change the effect of his original deed containing this building restriction, executed under the general plan and with the purpose of benefiting the other lots."

To the same effect is *Clark v. Kurtz*, 123 N. J. Eq. 174, 196 A. 727, and *Pappas v. Eighty Hundred Realty Company*, Mo. App., 1940, 138 S. W. (2d) 762.

In our opinion, after a full consideration of the facts and the law, the appellant is entitled to a permanent injunction enjoining respondents from the construction and operation of a business building on that portion of Lot No. 10 now owned by them.

Judgment reversed.

BAKER, C. J., and STUKES, TAYLOR and OXNER, JJ., concur.