## 18642

Nellie Reeves WILLIAMS *et al.*, Respondents, v. Dorothy C. CONE *et al.*, Defendants, of whom Dorothy C. Cone *et al.*, are Respondents, and Joseph E. Hartnett, *et al.*, are Appellants.

(154 S. E. (2d) 682)

*Clyde H. Turner, Esq.,* of Charleston, *for appellants,*

*Messrs. Stoney & Stoney, W. Turner Logan* and *A. Arthur Rosenblum,* all of Charleston, *for respondents,*

*Clyde H. Turner, Esq.,* of Charleston, *for appellant, in* reply,

May 2, 1967.

BRAILSFORD, Justice.

This is an appeal from a judgment of the circuit court declaring that certain lots in a subdivision near the City of Charleston, known as Carolina Terrace, are not burdened with residential restrictions.

The plaintiffs commenced this action for such declaratory relief as to four lots owned by them in block "B" of the subdivision. They named twelve lot owners as defendants and, pursuant to Section 10-205, Code of Laws 1962, made them representative of other such owners as a class. Three of the named defendants joined plaintiffs in seeking a declaration that five lots owned by them in the same block of the subdivision are not burdened with residential restrictions. The plaintiffs and these three defendants are respondents on this appeal, and will be so designated. Two of the named defendants and an intervening lot owner filed a joint answer in which they oppose the relief sought by respondents and assert that the lots in question are subject to valid residential restrictions. These three defendants are appellants and will be referred to as such. The remaining seven defendants defaulted.

There is no significant dispute as to the facts. In 1930 certain members of the Ravenel family conveyed to Carolina Terrace, Inc., a twenty acre tract of land lying in the fork of U. S. Highway 17 and S. C. Highway 61, a short distance west of the Ashley River and the City of Charleston. This tract was subdivided into eight blocks, containing a total of 139 lots, and a subdivision plat was recorded in the office of the Register of Mesne Conveyance for Charleston

County. The name "Carolina Terrace" was adopted. No restrictions were recorded with the plat. However, the subdivider, Carolina Terrace, Inc., inserted detailed restrictions in its deed of October 2, 1930, by which lot 2, block "I" was conveyed to Dan L. Cone. This was the first conveyance by the corporation and these provisions, by their terms, were designed to insure the development of the subdivision as a restricted residential area. It was recited that the covenants should bind the parties and their successors, "for the benefit of themselves and all other lot owners in the said development." These restrictions, which are referred to in the record and here as the Cone restrictions, do not contain a terminal date.

Carolina Terrace, Inc., sold and conveyed a total of eighteen lots to individual purchasers between 1933 and 1936. The Cone restrictions were haphazardly incorporated into some deeds and omitted from others, with the result that seven of the eighteen lots were subjected to these restrictions by deed and eleven were not. Under some arrangement not disclosed by the record, the corporation disposed of the remaining 121 lots in bulk by conveying sixty of them to Arthur Ravenel and sixty-one to Emily Ravenel.

The deeds from Carolina Terrace, Inc., to the Ravenels contained no use restrictions. However, Arthur Ravenel inserted the Cone restrictions in his deed and recorded it a second time, with a declaration signed by him .that the omission of the restrictions from the deed had been inadvertent. He made numerous sales of lots in the subdivision prior to May 1, 1939, and consistently incorporated the Cone restrictions in deeds to the purchasers. Emily Ravenel never adopted the Cone restrictions. In all of the numerous conveyances made by her prior to May 1, 1939, she consistently omitted any reference to restrictions on the use of the lots.

The omission of restrictions in most of the deeds out of Carolina Terrace, Inc., their consistent omission from deeds of Emily Revenel and other factors, caused confusion

and doubt as to whether any lots in the subdivision were subject to valid restrictions. Because of this, some lot purchasers encountered difficulty in obtaining mortgage loans for residential construction. Looking toward a solution of this problem, the owners of some 118 lots, including Arthur Ravenel and Emily Ravenel, reached an agreement which culminated in a written contract on May 1, 1939. This contract imposed comprehensive building and use restrictions on the property of the contracting parties for the benefit of all lot owners in the subdivision, terminating on January 1, 1962, unless renewed according to the terms of the agreement, which was not done. An exception was made as to block "A", consisting of four lots, which permitted the continuance of commercial uses to which these lots had already been devoted.

The record indicates that after May 1, 1939, most conveyances in the subdivision were made subject to the covenants of that date, and none referred to the Cone restrictions.

With notable exceptions, Carolina Terrace developed as a residential subdivision and retains that character. However, the formerly rural and quiet surroundings have undergone drastic changes, involving extremely heavy traffic and extensive commercial development on and near the highways which bound the small residential area. Block "A", forming the eastern tip of the subdivision, has been devoted to commercial use since before the 1939 contract was signed. Lots 1, 2 and 3 of block "B" have been occupied by a Gulf Service Station since 1954. At the time of the commencement of this action, the owner of lots 4 and 15 of block "B", which are contiguous to each other and to the Gulf Station, occupied one lot and operated a marine engine repair service on the other. The respondents own nine of the remaining ten lots in this block.

A chain store occupies a new commercial type building in block "E" opposite the Gulf station. Other scattered lots are devoted to uses which do not conform to either set of restrictions, such as duplex apartments, trailers, multiple dwellings, tourist homes, etc.

Apparently, no lot owner has ever resisted any of the commercial uses which have been recited. In fact, the construction of the Gulf Service Station followed a declaratory judgment permitting this use on the ground of changed conditions. This judgment was awarded in a class action against which the lot owners, after holding a well attended meeting, elected not to defend.

According to the terms of the 1939 contract, the covenants and restrictions thereby imposed expired in 1962. Hence, they are no longer operative and lend no support to the appeal, which must fail unless supported by the Cone restrictions.

Each of the appellants traces title to his lot to Emily Ravenel. She conveyed the first of these lots on May 15, 1937, by unrestricted deed, which was consistent with seven previous conveyances by her, none of which imposed any use restrictions. She retained the other two lots until after May 1, 1939, and conveyed them subject to the use restrictions of that date.

The Cone restrictions do not appear in the chain of title to any of the lots owned by appellants, and the circuit court held that they have no standing to invoke them. This conclusion is urged upon us by respondents, and we are satisfied that the facts which have been stated require its adoption.

Appellants' basic contention is founded upon the doctrine of reciprocal easements by implication, which has been expounded in such cases as *Pitts v. Brown*, 215 S. C. 122, 54 S. E. (2d) 538; *Edwards v. Surratt*, 228 S. C. 512, 90 S. E. (2d) 906; and *Stanton v. Gulf Oil Corporation*, 232 S. C. 148, 101 S. E. (2d) 250. The following quotation from *Stanton* states the rule and suggests its inapplicability here:

"Where a common grantor opens a tract of land to be sold in lots and blocks, and before any lots are sold inaugurates a general scheme of improvement, and thereafter

sells each lot subject to such scheme of improvement, mutuality of covenant and consideration exists among the various purchasers of the lots, and they each have an interest in the negative equitable easement thus created. *Edwards v. Surratt*, 228 S. C. 512, 90 S. E. (2d) 906.

"In *Pitts v. Brown*, 215 S. C. 122, 54 S. E. (2d) 538, this court held that restrictive covenants imposed upon some lots, but not upon others, in the same subdivision were enforceable among all where it was clear that from the inception of the subdivision there had been a general plan for its residential development and such plan had been adhered to without material departure therefrom." 232 S. C. at 152, 101 S. E. (2d) at 251-252.

The above rule may apply even though restrictions are omitted from some conveyances in the area covered by the plan of development and even though there may be some variations in the restrictions. However, extensive omissions tend to show either that no scheme exists, *Pitts v. Brown, supra,* 215 S. C. 122, 54 S. E. (2d) 538, or that it has been abandoned.

Quite clearly, Carolina Terrace, Inc., inaugurated a plan of development by delivery of the Cone deed with its recitals. Cone and other purchasers similarly situated, and their grantees, were entitled to rely upon it, and reciprocal easements affecting the remaining lots arose in their favor. 20 Am. Jur. (2d), Covenants, etc., Sections 173, 175. However, as to all save those who had purchased in reliance upon the plan of development and their privies, the subdivider had the right to abandon the scheme and devote the remaining lots to prohibited uses, or to convey them to others without use restrictions.

After having sold and conveyed only eighteen of the 139 lots, eleven of which were unrestricted, the subdivider conveyed the remaining lots in bulk without binding the grantees to the plan of development. Only prior purchasers from the corporation had standing to complain or to enforce adherence to the scheme.

The only other class of persons who might have standing *inter se* to enforce the Cone restrictions are the grantees of Arthur Ravenel, who undertook to bind the lots which he acquired in the subdivision. However, appellants are not in privity with Arthur Ravenel and can not assert any rights arising from his course of conduct. They hold title under Emily Ravenel, who adopted no restrictions until she became a party to the contract of May 1, 1939.

That there might be other classes of persons entitled to invoke the Cone restrictions does not improve appellants' standing in this action. They are entitled to be heard only on issues maintainable by the class to which they belong.

We affirm the conclusion of the circuit court that the 1939 restrictions have expired and that no rights may be rested upon them. Since appellants have no standing to invoke or to. defend the Cone restrictions, in other respects, the appeal must be and is dismissed.

Moss, C. J., Lewis and Bussey, JJ., and G. Badger Baker, Acting Associate Justice, concur.