19426

Harold H. HEFFNER, Appellant, v. LITCHFIELD GOLF COMPANY, Inc., Respondent

(189 S. E. (2d) 3)

*Messrs. Cecil W. Schneider,* of Georgetown, and *Nathaniel L. Barnwell* of *Barnwell, Whaley, Stevenson & Patterson,* Charleston, *for Plaintiff-Appellant,*

*Messrs. Moore, Flowers & Doar,* of Georgetown, *for Defendant-Respondent,*

May 24, 1972.

BRAILSFORD, Justice:

This is an appeal from an order of the circuit court denying an injunction against the proposed construction of tennis courts on two lots owned by the respondent, Litchfield Golf Company, Inc:, hereinafter called Litchfield.

In 1969 the appellant purchased from Litchfield lot number 33, section E, as shown on the recorded plat of Litchfield Golf Club and subdivision. The recorded plat contained no restrictions on land use within the subdivision, which consists of 580 lots laid out with maximum exposure to the eighteen hole golf course and related facilities. However, all conveyances of lots within the subdivision, including the conveyance to appellant, have contained identical provisions, twenty in number, which impose limitations on the use of the lot conveyed. The first provision restricts the lot to residential use. The twentieth provision, at the heart of the case, reads:

"It is understood and agreed that these covenants, conditions and restrictions are made solely for the benefit of the Grantor and Grantee herein and may be changed at any time by mutual consent in writing of the parties hereto, their heirs, successors or assigns."

Lots 30, 31 and 32 of section E had been sold by Litchfield before the appellant purchased lot 33. These four lots front on serpentine Eagle Avenue which meanders between the eighth and ninth holes, the clubhouse area, the fifth, sixth and seventh holes, the practice range and the tennis court area. A total of thirty-three lots front on this street. Twenty-eight of these, including lots 30-33, abut directly on the golf course. Lot 30 is the westernmost of the four lots, and it is bounded by the tennis court area on the west. Some time after the appellant completed construction of an expensive home on his lot, Litchfield reacquired lots 30 and 31 and made known its intention to expand the club's tennis court area by utilizing lots 30 and 31. The appellant, whose home is separated from the existing courts by lots 30-32, each fronting one hundred feet on Eagle Avenue, contends that these lots are burdened with restrictions which preclude the intended use.

Because of the express limitation contained in the above quoted provision of the indenture, appellant has no standing to enforce the restrictive covenants imposed upon lots 30 and 31 on the occasion of their original sale by Litchfield. Litchfield and the grantees in that deed reserved to themselves the right to modify the restrictions imposed on the use of the lots, and Litchfield presently stands simultaneously as original grantor and as successor to the original grantees of those lots. Hence, the covenant, as such, does not bar the intended use of the premises by Litchfield.

Appellant's suit must fail unless it is supported by the doctrine of reciprocal negative easements by implication, which has been expounded in a number of our decisions, including *Easterly v. Hall*, 256 S. C. 336, 182 S. E. (2d) 671 (1971); *Williams v. Cone*, 249 S. C. 374, 154 S. E. (2d) 682 (1967); and *Stanton v. Gulf Oil Corporation*, 232 S. C. 148, 101 S. E. (2d) 250 (1957). The doctrine was stated in *Stanton* as follows:

"Where a common grantor opens a tract of land to be sold in lots and blocks, and before any lots are sold inaugurates a general scheme of improvement, and thereafter sells each lot subject to such scheme of improvement, mutuality of covenant and consideration exists among the various purchasers of the lots, and they each have an interest in the negative equitable easement thus created. *Edwards v. Surrat,* 228 S. C. 512, 90 S. E. (2d) 906.

"In *Pitts v. Brown,* 215 S. C. 122, 54 S. E. (2d) 538, this court held that restrictive covenants imposed upon some lots, but not upon others, in the same subdivision were enforceable among all where it was clear that from the inception of the subdivision there had been a general plan for its residential development and such plan had been adhered to without material departure therefrom." 232 S. C. at 152, 101 S. E. (2d) at 251-252.

Mutuality of covenant and consideration, which are essential to the existence of a general scheme of development enforceable, *inter se,* by the purchasers of lots in a subdivision may be implied only when the common grantor manifests his intention to subject the parcels conveyed to common restrictions for the benefit of all grantees. By the express terms of the twentieth provision, uniformly included in the *Litchfield* deeds, the benefit of the restrictions in each is limited to the parties thereto, who reserve the right to modify or abrogate by mutual assent. This directly precludes an implication that the grantor intended to create restrictions for the benefit of all purchasers in the subdivision. By near unanimous authority, no enforceable general scheme of development is inferable in the face of a provision of this tenor. See the cases collected at 19 A. L. R. (2d) 1274, 1282 (1951), and 4 A. L. R. 3d 570, 573 (1965) ; 26 C. J. S. Deeds § 167(2) at 1145 (1956) ; 20 Am. Jur. (2d), Covenants, Conditions, and Restrictions, Sec. 178 (1965) ; *Humphrey v. Beall,* 215 N. C. 15, 200 S. E. 918 (1939) ; *Brighton by the Sea, Inc. v. Rivkin,* 201 App. Div. 726, 195 N. Y. S. 198 (1922).

We add that the use to which Litchfield proposes to put these lots is consistent with the combined recreational and residential character of the development. We do not intend to imply that the residents of this subdivision would be without remedy against an incompatible use. That question has not been presented.

Affirmed.

Moss, C. J., and Lewis, Bussey and Littlejohn, JJ., concur.