307 S.C. 299 (1992)
414 S.E.2d 795
SHIPYARD PROPERTY OWNERS' ASSOCIATION, Appellant-Respondent
v.
Stephen MANGIARACINA, William F. Llewellyn, Duncan A. MacLeod, MARILYN A. MacLeod, Justus A. Emens, Lee L. Lachiver, William Ohlson, Henry H. Johnson, Ronald Seamon, Nancy Seamon, Richard C. Chase, Frank Bocuzzi, Mary Bocuzzi, David O. Hoagland, Confidential Escrow & Title, a South Carolina Corporation, Fred Dickerman, Inge Dickerman, Saunders T. Craige, Martha M. Craige, Malcolm Binks, Jillian Binks, Hermann F. Kuhlmann, Lucille Kuhlmann, Michael Milazzo, John L. Foley, Larry J. Powell, George V. Lennon, III, Donald A. Pierce, Thomas M. Krebs, Eleanor W. Krebs, Eugene J. Aleshevich, Erich Lippert, Ingrid Lippert, John D. Hurley, Alberta Hurley, Bernard A. Wood, Patricia Wood, Richard Christenson, Marsha Lyn Christenson, Thomas R. Sands, Jr., Kristin J. Sands, Jerry C. Lloyd, Carol Lloyd, William J. Donlin, Jeanette L. Pitt, Marion Corrubia, Frank Gregory, Donna Gregory, William P. Griffin, Rachael E. Ambruoso, Reiner Sahm, Volker Sahm, Rusell C. Reisdorf, Paul Anthony, Martha Anthony, Larry C. Mills, Sally P. Mills, W.M. Godfrey, Eugene Mazza, Rosemary Mazza, William Scholz, Ramola Dawn Turner, Anne Shelmerdine Wolff, William J. Bruno, Richard Roundtree, Robert I. Jonason, James K. Carlin, Glorianne F. Carlin, William Ruth, Kathleen Ruth, William Hill, Louis H. Sharpe, Diane E. Sharpe, James P. Scheider, Jr., Gary E. Reavis, William R. Golya, Eileen M. Golya, Phillip O. North, Jerry L. Cooper, Bill Tennison, Sharon Tennison, Salvatore Piazza, Thomas A. Gisonde, Donna M. Macaluso, Orville E. Enders, Joyce R. Robinson, Bennett Robinson, Suzanne Robinson, Joseph Schramm, Beck General Partnership, a Tennessee General Partnership, c/o Rufus Smith, Wilson C. Hewitt, Edward Nano, Lorraine Nano, Donald Kennedy, Jean Kennedy, Charley Duggan, Samuel Nalbone, Beverly P. Gilliam, Sharon G. Meltzer, Brigitte Sahm, Angela Wyland, Paul McKenzie, Patricia McKenzie, Arthur Fisher, Frederic D. Jackson, Una Jackson, Thomas V. Fuller, August Wavpotich, Barry Honowitz, Sue E. Taylor, James D. Cornetet, Dean D. Monaco, Richard H. Lincoln, Albert C. Esposito, Albert M. Magaril, William E. Felling, Claude F. Hughes, Karla J. Collins, Jane M. Karaffa, Joan M. Gresick, George Janis, Mary Ann Janis, Ronald Marone, Charles Witte, Thomas W. Ehrmann, Leroy Saylor, Milo Britza, Bradford Tisdale, Lois B. Williamson, Robert Benson, Preston Ehmann, Alven Pelzner, Thomas D. Reilley, Selwyn Sternheim, Louise Sternheim, Guyla, Hurst, Joseph Pazdan, C. Elwood Gagg, Wilbur A. Steger, Sheila Steger, Gertrud Edgerly, Leslie Purcell, Robert G. Johnson, Lawton B. Box, V.B.M. Realty Co., an Ohio Corporation, c/o Samuel Bumgarner, William W. Woodard, Maxine Woodard, Albert Burns, Jon W. Watkins, Helen Watkins, Everett C. Call, Walter W. Shearer, Edward F. Grubic, Scott P. Hess, H.H. Humphrey, Jr., N.J. Noyes, Robert B. Ford, Gayle A. Ford, Roany B. Thomas & Associates, Inc. Money Purchase Pension Plan & Trust, a North Carolina Association, Arthur H. Johnson, Ray E. Pritchard, Carol C. O'Connor, Robert R. Simpson, Sylvester C. Shea, Marth C. Worthy, James E. O'Connell, Doris C. O'Connell, Thomas Rorer, George T. Tipton, Carolyn L. Lilligore, Personal Representative of the Estate of Joseph Lilligore, John B. Crenshaw, Keith Knudsen, J. Michael Cahill, Richard Fisher, H. William Mullaney, John V. Egan, D. Leibold, E. Jackson, Mildred T. Clegg, Kenneth E. Darr, Joe Wheeler, Ludelle Wheeler, Robert J. Habetler, Thomas Nierman, D.H. Wallace, W.C.K. Investors, an organization existing under the Laws of the State of Ohio, c/o Nancy M. Booth, Robert W. Gerwig, J.L. Hutton, Dennis J. Holland, Jr., Eugene D. Ruegamer, Agnes C. Ruegamer, John J. Kowatch, Walter M. Greer, Margaret M. Greer, John H. Bringhurst, Jr., Charlotte R. Herlihy, John T. Herlihy, John T. Crankshaw, Carole J. Crankshaw, William H. Deck, James Eckenrode, Sr., Barbara Eckenrode, George A. Donnelly, III, Ann E. Donnelly, Joseph A. Greco, Janet R. Moline, David J. Jackson, Rachel D. Jackson, W.R. Van Dresser, O.W. Cundiff, C.N. Lester, J.A. Reynolds, Oscar H. Schmitt, Michael Z. Hughes, Chicago Neurological Surgeons, LTD, a Chicago Limited Partnership, c/o Thomas J. Stilp, Trustee, Thomas J. Stilp, Pauline E. Stilp, Elizabeth F. Junggren, James Rizzi, James P. Sheehan, Mathilde W. Connal, Carol A. Andrews, Mary Alice Vigneault, Pauline Mitchell, Palmetto Federal Savings & Loan, a Corporation organized and existing under the Laws of the United States, John A. Brockreide, Richard Groninger, Eugene Bush, Miriam R. Bush, Shirstan, a South Carolina General Partnership, c/o Rees Westmark, William P. Martini, Lawlor Quinlan, Mary Quinlan, Bianca Pearse, Arthur E. Levy, Peter H. Zachman, John Terka, William Long, Jean Long, Reinsch Maxwell, Tamara Maxwell, Robert J. Oberst, Karen Bostian, Dunbar Builders Hardware, Inc., a Pennsylvania Corporation, Hooster Travel Services, an Indiana Corporation, c/o Ken Komerten, James H. Lundquist, Preston W. Hartman, Charles C. Hartman, Ronald N. Robinson, Anthony J. Pung, Gail Quick, Lois R. Wastler, Leonard A. Wood, Billie Jean King, Richard Golobic, George L. Milne, William M. Sangster, George Hope, Anne S. Hope, Donnie B. Harris, Barbara M. Harris, Ballco, Inc., a West Virginia Corporation, Donald Fischer, Ralph Powell, Grace G. Piper, Harold Daniel, Charles A. Heck, Joe B. Holder, Robert F. Lane, Patricia A. Lane, Jerald Connor, Walter Dial, John F. McCoy, Ramona McCoy, Thomas Mullaney, Jack R. Williard, Alice L. Williard, Frank Macaluso, W. Walter LaRoche, Personal Representative of the Estate of William W. LaRoche, David F. Reilley, Judith Ann Gallagher, Lois Watkins Hayes, Martin R. Stones, James W. Sliker, Deane G. Hope, Patricia I. Hope, Susan Stahli Tomanelli, Gary L. Tauscher, Judith L. Tauscher, Ted C. Dillon, H.A. Denicola, Ronald L. Mintz, Donald Kam, Gail P. Kam, Robert P. Penny, Judith Penny, David W. Syrek, Oscar Schmitz, Marlis Schmitz, W. Budd Wentz, Tony Vaziri, Sue Vaziri, Robert A. Marsh, and "doe" Defendants which may be presently unknown to Plaintiff/Appellant, of whom William F. Llewellyn, Justus A. Emens, Lee L. Lachiver, Henry H. Johnson, David O. Hoagland, Fred Dickerman, Inge Dickerman, John L. Foley, George V. Lennon, III, Donald A. Pierce, Erich Lippert, Ingrid Lippert, Jeanette L. Pitt, Marion Corrubia, Reiner Sahm, Volker Sahm, Paul Anthony, Martha Anthony, William J. Bruno, Richard Roundtree, James K. Carlin, Glorianne F. Carlin, William Ruth, Kathleen Ruth, William Hill, Louis H. Sharpe, Gary L. Tauscher, Judith L. Tauscher, Diane E. Sharpe, Orville E. Enders, Joseph Schramm, Beck General Partnership, Wilson C. Hewitt, Brigitte Sahm, Reiner Sahm, Barry Honowitz, James D. Cornetet, Claude F. Hughes, Leroy Saylor, Bradford Tisdale, Lois B. Williamson, Robert Benson, Gertrud Edgerly, Leslie Purcell, Lawton B. Box, Robert B. Ford, Gayle A. Ford, Roany B. Thomas & Associates, Robert R. Simpson, James E. O'Connell, Doris C. O'Connell, John B. Crenshaw, Keith Knudsen, J. Michael Cahill, John V. Eagan, Loretta D. Eagan, W.C.K. Investors, J.L. Hutton, Walter M. Greer, Margaret M. Greer, John H. Bringhurst, Jr., Charlotte R. Herlihy, C.N. Lester, W.R. Van Dresser, O.W. Cundiff, J.A. Reynolds, Oscar H. Schmitt, Elizabeth F. Junggren, James P. Sheehan, Carol A. Andrews, Pauline Mitchell, Richard Groninger, Shirstan, William P. Martini, Bianca Pearse, Arthur E. Levy, Peter H. Zachman, Robert J. Oberst, Dunbar Builders, Preston W. Hartman, Charles C. Hartman, Ronald N. Robinson, Anthony J. Pung, Leonard A. Wood, George L. Milne, George Hope, Anne S. Hope, Donnie B. Harris, Barbara M. Harris, Ralph Powell, Grace G. Piper, Joe B. Holder, Jerald Connor, Jack R. Williard, Alice R. Williard, Lois Watkins Hayes, Deane G. Hope, Patricia I. Hope, David W. Syrek, are Respondents-Appellants.
1764
Court of Appeals of South Carolina.
Heard December 11, 1991.
Decided February 10, 1992.
*300 *301 *302 *303 Edward E. Bullard, Hilton Head Island, for appellant-respondent.
Frank H. Clabaugh and Stephen E. Carter, of Ruth, Clabaugh & Hack, Hilton Head Island, for respondents-appellants.
Stephen Mangiaracina, Frank Bocuzzi, Mary Bocuzzi, Herman F. Kuhlmann, Lucille Kuhlmann, Michael Milazzo, Larry J. Powell, Jerry C. Lloyd, Carol Lloyd, Rachael E. Ambruoso, William Scholz, William R. Golya, Eileen M. Golya, Salvatore Piazza, Donna M. Macaluso, Joyce R. Robinson, Bennett Robinson, Suzanne Robinson, Thomas V. Fuller, August Wavpotich, Richard H. Lincoln, Albert C. Esposito, Albert M. Magaril, George Janis, Mary Ann Janis, Milo Britza, C. Elwood Gagg, Walter W. Shearer, Edward F. Grubic, H.J. Noyes, Sylvester C. Shea, Thomas Rorer, Richard Fisher, H. William Mullaney, Robert J. Habetler, Thomas Nierman, Janet R. Moline, David J. Jackson, Rachel D. Jackson, Palmetto Federal, Eugene Bush, Miriam R. Bush, Thomas Mullaney, W. Walter LaRoche, James W. Sliker, Judith Penny, Donald Kam, Gail P. Kam, Robert A. Marsh, Duncan A. MacLeod, Marilyn A. MacLeod, W. Ron Vaughn, Jo V. Vaughn, Edward J. Fleming, Jr., Thomas M. Krebs, Eleanor W. Krebs, John D. Hurley, Alberta Hurley, Richard Christenson, Marsha Lyn Christenson, Thomas R. Sands, Jr., Kristin J. Sands, Eugene Mazza, Rosemary Mazza, James P. Scheider, Jr., Gary E. Reavis, Phillip O. North, Donald Kennedy, Jean Kennedy, Charley Duggan, Samuel Nalbone, Angela Wyland, Arthur Fisher, Sue E. Taylor, Dean D. Monaco, Jane M. Karaffa, Joan M. Gresick, Preston Ehmann, Alven Pelzner, Wilbur A. Steger, Sheila Steger, V.B.M. Realty Co., William W. Woodard, Maxine Woodard, Albert Burns, Jon W. Watkins, Helen Watkins, Everett C. Call, Betty E. Call, Scott P. Hess, H.H. Humphrey, Jr., Carol C. O'Connor, Martha C. Worthy, Carolyn L. Lillagore, D.H. Wallace, Robert W. Gerwig, Eugene D. Ruegamer, Agnes C. Ruegamer, John T. Crankshaw, Carole J. Crankshaw, James Eckenrode, Sr., Barbara Eckenrode, Michael Z. Hughes, Chicago Neurological Surgeons, LTD., Thomas J. Stilp, Pauline E. Stilp, Mathilde W. Connal, Mary Alice Vigneault, John Terka, William Long, Jean Long, *304 Karen Bostian, Gail Quick, Lois R. Wastler, Ballco, Inc., Harold Daniel, Robert F. Lane, Patricia A. Lane, John F. McCoy, Ramona McCoy, Ronald L. Mintz, William Ohlson, Ronald Seamon, Nancy Seamon, Richard C. Chase, Confidential Escrow & Title, Malcolm Binks, Jillian Binks, Eugene J., Aleshevich, Bernard A. Wood, Patricia Wood, William J. Donlin, Frank Gregory, Donna Gregory, William P. Griffin, Russell C. Reisdorf, Larry C. Mills, Sally P. Mills, W.M. Godfrey, Robert I. Jonason, Jerry L. Coper, Bill Tennison, Sharon Tennison, Edward Nano, Lorraine Nano, Beverly P. Gilliam, Paul McKenzie, Patricia McKenzie, Fredric D. Jackson, Una Jackson, William E. Felling, Karla L. Collins, Ronald Marone, Thomas W. Ehrmann, Thomas D. Reilley, Selwyn Sternheim, Louise Sternheim, Guyula Hurst, Joseph Pazdan, Robert G. Johnson, Arthur G. Johnson, Ray E. Pritchard, George T. Tipton, D. Liebold, E. Jackson, Mildred T. Clegg, Kenneth E. Darr, Joe Wheller, Ludelle Wheeler, Dennis J. Holland, Jr., John J. Kowatch, William H. Deck, George A. Donnelly, III, Ann E. Donnelly, Joseph A. Greco, James Rizzi, John A. Brockreide, Lawlor Quinlan, Mary Quinlan, Reinsch Maxwell, Tamara Maxwell, Edward S. Nano, Hooster Travel Services, James H. Lundquist, Billie Jean King, Richard Golobic, William M. Sangster, Donald Fischer, Charles A. Heck, Walter Dial, Frank Macaluso, David F. Reilley, Judith Ann Gallagher, Martin R. Stones, Susan Stahli Tomanelli, Ted C. Dillon, H.A. Denicola, Oscar Schmitz, Marlis Schmitz, Ronald Seamon, Nancy Seamon, W. Budd Wentz, Tony Vaziri, Sue Vaziri, Sharon G. Meltzer, Charles Witte, defendants-respondents, pro se.
Heard Dec. 11, 1991.
Decided Feb. 10, 1992.
CURETON, Judge:
In this declaratory judgment action, Shipyard Property Owners' Association (Shipyard) seeks a judicial declaration granting it authority to alter the assessment provisions in the covenants and restrictions for certain property owners in Shipyard Plantation, a planned unit development (PUD). The master concluded Shipyard could not alter the assessment provisions and Shipyard appeals. We affirm.
*305 There is no dispute as to the basic facts of this case. Shipyard Plantation is a PUD on Hilton Head Island consisting of single-family residential, multi-family residential, recreational, and commercial areas. The PUD was developed over a thirteen year period from 1970 to 1983.
The original developer, The Hilton Head Company, Inc., established certain covenants and restrictions applicable to all the property. Rather than file a single declaration of covenants covering all residential areas, it prepared and filed separate documents for each residential area at or near the time the area was developed.
All together, thirty-two (32) sets of covenants and restrictions were filed. The covenants and restrictions expressly run with the land and appear to be uniform, except for provisions relating to the assessments to be paid for community services and the maintenance of common areas. Five of the covenants provide for fixed assessments, while the remaining twenty-seven provide for variable assessments.
Of the two hundred seventy-nine (279) single family dwelling units, seventy-nine (79) pay a fixed annual assessment of $50.00 per year. Of the eleven hundred ninety-nine (1,199) multi-family dwelling units, one hundred (100) units pay a fixed assessment of $50.00 per year and fifty-one (51) units pay a fixed assessment of $100.00 per year. Thus, of the fourteen hundred seventy-eight (1,478) dwelling units in the PUD, two hundred thirty (230) pay fixed annual assessments of either $50.00 or $100.00. The remaining twelve hundred forty-eight (1,248) dwelling units pay a variable annual assessment. The present variable assessment for most units is $385.00 per year. The variable assessments are subject to annual increases.
The fixed assessment covenants and restrictions were executed between December 1970 and February 1977. During that period of time, a total of six variable assessment covenants were also executed.[1] There is no explanation in the covenants nor is there a readily discernible reason why some *306 covenants provided for fixed assessments and others provided for variable assessments. As noted by the master, a dramatic example of the disparity created by having both fixed and variable annual assessments may be found by examining the Townhouse Tennis Horizontal Property Regime. Covenants and restrictions covering the thirty-six (36) units in that area were recorded in 1977. Twelve (12) of the units pay fixed assessments of $50.00 per year while the remaining twenty-four (24) units, which are immediately adjacent to the twelve (12), pay annual assessments of $385.00.[2]
After a bankruptcy proceeding and change of ownership, Shipyard acquired ownership of the common properties in 1988. By virtue of this acquisition, Shipyard assumed responsibility for providing certain community services and maintenance of common properties in the PUD. The master found that, unlike the original developer, Shipyard is a non-profit corporation composed entirely of the residential and commercial owners in the PUD. He also found that with the minor exception of vehicle permit fees, Shipyard's only source of income is the collection of assessments.[3] He further found increases in the cost for providing services are presently borne by property owners with variable annual assessments.[4]
In 1989, Shipyard brought this action seeking authority to modify the assessment provisions in the covenants of the respondents so as to eliminate the fixed annual assessments and equalize the assessment burden on all property owners in the PUD. Shipyard bases its right to modify the assessments on (1) changed conditions occurring subsequent to the filing of the covenants and (2) the doctrine of reciprocal negative easements which would impose the variable assessment covenants uniformly throughout the PUD. The owners answered and counterclaimed demanding the court uphold the fixed assessments based on the defenses, inter alia, of the statute of frauds, the statute of limitations, lack of jurisdiction, laches, and lack of standing.
*307 The master concluded the covenants and restrictions do not permit Shipyard to modify the fixed assessments based on the theories of changed conditions or reciprocal negative easements. He also found he was without jurisdiction in this declaratory judgment action to invalidate express provisions of the covenants and modify the assessments.
The issues raised on appeal are whether: (1) the trial court erred in finding neither the doctrines of changed conditions nor reciprocal negative easements permits modification of the fixed assessments; (2) the trial court committed reversible error in finding Shipyard sought a court ordered modification of the fixed assessments and the attendant ruling that it had no jurisdiction to order modification; and (3) the trial court should have granted the defendants relief based on the defenses raised in their answers and counterclaims.

CHANGED CONDITIONS
The owners first argue the master should not have made a factual determination of whether there were sufficient changed conditions to warrant modification of the covenants. They base their argument on the fact that no testimony or factual stipulations were entered into the record regarding changed conditions. The parties submitted the case to the master on trial briefs only. Thus, the owners assert the master was required to determine the rights of the parties based only on a legal interpretation of the covenants and restrictions.[5] At oral argument before this court, Shipyard's attorney conceded it did not request cancellation or reformation of the covenants and restrictions in its pleadings.[6] Additionally, he acknowledged Shipyard makes no contention the covenants and restrictions are unenforceable or illegal. Finally, we note the master found the covenants to be "clear and unambiguous, and not subject to interpretation or construction." No exception was taken to that finding.
*308 Where an action presents a question as to the construction of a written contract and the language of the contract is clear and unambiguous, the question is not one of fact but one of law. J.T.M. Co., Inc. v. Vane, 283 S.C. 512, 323 S.E. (2d) 794 (Ct. App. 1984). Moreover, where the language imposing restrictions upon the use of property is unambiguous, the restrictions will be enforced according to their obvious meaning. Donald E. Blatz, Inc. v. R.V. Chandler & Co., Inc., 248 S.C. 484, 151 S.E. (2d) 441 (1966). With this backdrop of concessions and the master's unappealed lack of ambiguity finding, we hold the master's factual findings regarding changed conditions were inappropriate and constitute error.
Although the master went too far in making findings of fact regarding changed conditions, he nevertheless correctly determined there were insufficient grounds for finding a change of circumstances warranting a modification of the covenants. In the first instance, it is not clear to us how the doctrine of changed conditions is applicable to the case sub judice. This doctrine is usually applied to situations restricting the use of land. Assuming the doctrine is applicable, it is clear all purchasers of property in Shipyard Plantation burdened with variable assessments had constructive notice of the prior sale of lots subject to fixed assessments.[7]
We do not know the reason why certain assessments are fixed while others are variable. As noted by the master: "Here, perhaps the purchasers of fixed rate assessment units paid more, or perhaps because they were early purchasers, to the extent this is true, a fixed rate was an incentive to them not available to later purchasers."
To defeat enforcement of covenants restricting the use of land, changed conditions must be so radical as to practically destroy the essential objects and purposes of the covenants. Pitts v. Brown, 215 S.C. 122, 54 S.E. (2d) 538 (1949). Aside from the fact there may have been a rational basis for the disparity in assessments, Shipyard has not convinced us the inequity in assessments occurring subsequent to imposition of the covenants is so radical as to destroy the essential purpose of the restrictions and covenants. Indeed, *309 Shipyard argues the restrictions and covenants are enforceable. We therefore hold Shipyard has not shown sufficient changed conditions to warrant a court declaration that the fixed assessments are unenforceable or should be modified.

RECIPROCAL NEGATIVE EASEMENTS
The essential elements for proof of a reciprocal negative easement are (1) a common grantor, (2) a designation of land subject to restrictions, (3) a general plan or scheme of restrictions, and (4) covenants running with the land in accordance with such plan or scheme. Bomar v. Echols, 270 S.C. 676, 244 S.E. (2d) 308 (1978); McDonald v. Welborn, 220 S.C. 10, 66 S.E. (2d) 327 (1951). In order for reciprocal negative easements to be created by implication, the implication must be plain and unmistakable. Edwards v. Surratt, 228 S.C. 512, 90 S.E. (2d) 906 (1956). Shipyard argues all of these elements are present in this case. For purposes of this opinion, we acknowledge the record reflects three of the four elements are satisfied. The one element the master found lacking was a general plan or scheme of restrictions.
Generally, the developer must establish the general scheme of development before any lots are sold. Heffner v. Litchfield Golf Co., 258 S.C. 447, 189 S.E. (2d) 3 (1972). To establish a general scheme, it is not necessary for every lot to be restricted in exactly the same manner, but extensive omissions or variations tend to show no scheme existed and the restrictions are only personal contracts. Reyner v. Stephens, 289 S.C. 575, 347 S.E. (2d) 878 (1986) (citing Pitts v. Brown, 215 S.C. 122, 54 S.E. (2d) 538 (1949)).
Here, we think it important to examine the record for evidence whether at the time the last fixed assessment covenant was recorded there was in place a general scheme of covenants burdening the properties in the PUD with variable assessments. This is important because reciprocal negative easements are never retroactive. Sanborn v. McLean, 233 Mich. 227, 206 N.W. 496 (1925). As noted above, during the development period of December 1970 through February 1977, five of the restrictions and covenants provided for fixed assessments and six provided for variable assessments. In fact, the first three restrictions and covenants provided for fixed assessments. Such covenants indicate no plain *310 and unmistakable implication that during such period the developer intended to burden the land with variable assessments or intended to reserve the right to modify the fixed assessments. Reyner, 289 S.C. 575, 347 S.E. (2d) 878. We hold Shipyard has not shown a right to imposition of reciprocal negative easements which would provide for variable assessments throughout the PUD.
Shipyard next asserts the master erred in holding he did not have jurisdiction in this declaratory judgment action to modify the covenants. Because of our resolution of the above issues we need not address this question. Similarly, we need not address the appeal of the owners and the additional sustaining grounds.
Affirmed.
BELL, J., and LITTLEJOHN, Acting Judge, concur.
NOTES
[1] It is not clear from the record when each covenant was filed. The sixth variable assessment covenant was executed nine days after the last fixed assessment covenant was executed. For the purpose of this opinion, we assume they were recorded at times reasonably contemporaneous with their executions.
[2] We do not know the amount of the variable assessments in 1977.
[3] The Hilton Head Company, Inc., the original developer, was a for profit corporation which also owned and derived income from a golf course and racquet club. It had exclusive listing rights for the sale of lots in the PUD. The golf course and racquet club were sold to third parties.
[4] The property owners take exception to these findings claiming there is no factual basis for them.
[5] Prior to trial, the owners filed a motion "for judgment upon the pleadings; to dismiss for failure to state a cause of action; to dismiss for lack of jurisdiction and for summary judgment." At trial the parties agreed only a legal issue was involved and the case was submitted to the master on briefs.
[6] We recognize a declaratory judgment action may be the proper vehicle for securing an order extinguishing a covenant or restriction. Dunlap v. Beaty, 239 S.C. 196, 122 S.E. (2d) 9 (1961).
[7] In fact the master made an unappealed ruling to this effect.